

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

July 26, 1993

Honorable William R. Ratliff
Chair
Education Committee
Texas State Senate
P.O. Box 12068
Austin, Texas 78711

Opinion No. DM-240

Re: Construction of Senate Bill 1342, Acts 1993, 73d Leg., ch. 964, which prohibits a school district from contracting with a business entity in which a trustee or his spouse has a "significant interest" (RQ-571)

Dear Senator Ratliff:

You have requested our opinion regarding the proper construction of a portion of Senate Bill 1342, Acts 1993, 73d Leg., ch. 964. Section 2 of that bill amends chapter 23 of the Education Code by adding a new section 23.201, which provides:

> (a) The board of trustees of a school district may not enter into a contract with a trustee of the district, the spouse of a trustee, or a business entity in which a trustee or the spouse of a trustee has a significant interest until the trustee's current term has expired or until the trustee has resigned and a successor has been chosen to fill the vacancy created by the resignation.
>
> (b) In this section, the term "business entity" has the meaning provided by Section 171.001, Local Government Code.
>
> (c) For purposes of this section, a person has a substantial interest in a business entity if the person has a substantial interest in the business entity for purposes of Chapter 171, Local Government Code.
>
> (d) This section prevails over Chapter 171, Local Government Code, to the extent of any conflict.

Specifically, you inquire about the meaning of the term "significant interest" as used in subsection (a), *supra*. Before we address the meaning of this provision, we shall consider the scope of chapter 171, of the Local Government Code.

Chapter 171, first enacted in 1983 as article, 988b, V.T.C.S., and subsequently codified in 1987, is the general "conflict of interest" statute regulating local governmental

bodies. Section 171.002(a) provides that a "local public official"[1] has a substantial interest in a business entity[2] under the following circumstances:

> (1) the person owns 10 percent or more of the voting stock or shares of the business entity or owns either 10 percent or more or $5,000 or more of the fair market value of the business entity; or

> (2) funds received by the person from the business entity exceed 10 percent of the person's gross income for the previous year.

An individual is considered to have "a substantial interest in real property if the interest is an equitable or legal ownership with a fair market value of $2,500 or more." *Id.* 171.002(b). Furthermore, the person is deemed to have a "substantial interest" in either a business entity or in real property, as defined, "if a person related to the official in the first degree by consanguinity or affinity" has the requisite interest. *Id.* 171.002(c). Thus, for example, a local governmental official may not avoid the proscription of chapter 171 merely by transferring ownership of a "business entity" to his spouse.

Section 171.004 describes the consequences which flow from a local governmental official's having a "substantial interest in a business entity or in real property." Prior to the local governmental body's "vote or decision on any matter involving the business entity or the real property" in which the individual member has a substantial interest, the member is required, under certain circumstances, to file "with the official record keeper of the governmental entity" "an affidavit stating the nature and extent of the interest," *and* to "abstain from further participation in the matter." Those circumstances arise if:

> (1) in the case of a substantial interest in a business entity the action on the matter will have a special economic effect on the business entity that is distinguishable from the effect on the public; or

> (2) in the case of a substantial interest in real property, it is reasonably foreseeable that an action on the matter will have a

---

[1] A "local public official" is defined to mean "a member of the governing body or another officer, whether elected, appointed, paid, or unpaid, of any district (including a school district), county, municipality, precinct, central appraisal district, transit authority or district, or other local governmental entity who exercises responsibilities beyond those that are advisory in nature." Local Gov't Code § 171.001(1).

[2] A "business entity" is defined as "a sole proprietorship, partnership, firm, corporation, holding company, joint-stock company, receivership, trust, or any other entity recognized by law." Local Gov't Code § 171.001(2).

> substantial economic effect on the value of the property, distinguishable from its effect on the public."[3]

*Id.* § 171.004(a).

Subsection 171.003, of the Local Government Code, proscribes certain conduct by a "local public official": 1) failure to file the affidavit and refrain from voting in accordance with section 171.004, *supra*; 2) acting "as surety for a business entity that has work, business or a contract with the governmental entity;" and 3) acting "as surety on any official bond required of an officer of the governmental entity." *Id.* § 171.003(a). Each of these offenses is declared to be a class A misdemeanor. *Id.* 171003(b). Although chapter 171 thus criminalizes certain acts by a local governmental official, it does *not* render voidable board action taken in violation of its provisions "unless the measure that was the subject of an action involving a conflict of interest would not have passed the governing body without the vote of the person who violated the chapter." *Id.* § 171.006.

Thus, there are three principal distinctions between chapter 171 of the Local Government Code and section 23.201of the Education Code. The first distinction relates to the *subject* of regulation. Chapter 171 regulates the conduct of each individual board member, by requiring disclosure of any interest he might have in a contract, and prohibiting his participation in any discussion in or vote on such contract. Section 23.201, on the other hand, is directed at the conduct of the entire board of trustees.

The second distinction concerns the *consequences* of regulation. As we have noted, under chapter 171, unless the disqualified member's vote is the decisive one, even his actual participation in the vote will not render the contract voidable. By contrast, section 23.201 absolutely bars the board from entering into the contract in the first place. Presumably, a contract entered in contravention of section 23.201 is at least voidable.

The third distinction between the two "conflict of interest" provisions relates to the particular kind of conduct which is proscribed. Under chapter 171, such conduct occurs when a member of a local governmental body has, *inter alia*, a "substantial interest" in a business entity which is a party to a contract with the board of which he is a member. By contrast, section 23.201 prohibits a school district board of trustees from contracting with, *inter alia*, "a business entity in which a [current] trustee or the spouse of a [current] trustee has a significant interest. Acts 1993, 73d Leg., ch. 964, § 2. The term "significant

---

[3]If a *majority* of the members of the governmental body are required to file affidavits in a particular matter, the interested members are not required to "abstain from further participation in the matter." Local Gov't Code § 171.004(c). Obviously, such an exception is necessary to prevent an effective paralysis of the governmental body.

interest" is not defined.[4] Thus, the legislature has prohibited certain conduct, but has failed to furnish any guidance as to the meaning of a key element of the conduct proscribed. Furthermore, it has declared that the newly enacted section 23.201, Education Code, shall prevail "to the extent of any conflict" with chapter 171 of the Local Government Code. *Id.*

It is axiomatic that, in construing a statute, the primary objective must be to discern the legislative intent. *State v. Terrell*, 588 S.W.2d 784 (Tex. 1979). To effectuate that end, every word in a statute must, if possible, be given effect, and any construction which renders any part of a statute superfluous should, if possible, be avoided. *Gerst v. Oak Cliff Sav. & Loan Ass'n*, 432 S.W.2d 702 (Tex. 1968); *Spence v. Fenchler*, 180 S.W. 597 (Tex. 1915). Relying on these rules of construction, one might argue that it is necessary to read "significant" to mean "substantial" in order to avoid a construction that would, in effect, nullify subsection (c).

It is also the case, however, that particular language chosen by the legislature must be presumed to have been selected with deliberation. *Bomar v. Trinity Nat'l Life & Accident Ins. Co.* 579 S.W.2d 464 (Tex. 1979); *Cox v. Robison*, 150 S.W. 1149 (Tex. 1912); *see also* TEX. JUR. 3d *Statutes* § 132, at 735-36. These rules of construction indicate that, in selecting the word "significant" in subsection (a), the legislature must have meant something other than "substantial." Although in some usages their meanings may overlap, the two words are in no wise synonymous. *See* definition of "significant," OXFORD ENGLISH DICTIONARY, v. 15, pp. 458-59 (2d ed. 1989), and definition of "substantial," *id.* v. 17, pp. 66-68. Particularly in view of subsection (d), which declares the hegemony of section 23.201 "to the extent of conflict" with chapter 171, Local Government Code, we simply cannot avoid the inference that the legislature deliberately opted to use the word "significant," and to endow it with a meaning *different* from that of the word "substantial" as used in chapter 171.[5]

In summary, the legislature did not provide a definition of the word "significant," nor did it describe what "interest" might be deemed a "significant interest" for purposes of subsection (a) of section 23.201. In determining the extent of the term "significant interest," and its relationship to the statutorily defined "substantial interest," it should be borne in mind that, whereas chapter 171 permits a member having a "substantial interest" in a business entity to remain on the board, and further, does not prohibit the board from

---

[4]Subsection (c) states that "a person has a *substantial* interest in a business entity if the person has a *substantial* interest in the business entity for purposes of chapter 171 of the Local Government Code." (Emphasis added.) Since it is the word "significant" that lacks the requisite definition, one is left to wonder about why the legislature has here chosen to define the scope of "substantial."

[5]The bill analysis for Senate Bill 1342 is of no assistance in ascertaining legislative intent, because section 2, the portion under consideration here, did not appear in the version of the bill that was reported out of committee. *See* House Comm. on Public Education, Bill Analysis, S.B. 1342, 73d. Leg. (1993).

contracting with that entity, section 23.201 recognizes that, for some contracts, mere recusal is not sufficient; rather, the relationship between an individual board member and a business entity may be sufficiently troubling as to raise an absolute bar to any contract between the board and that business entity.

Furthermore, the language of section 23.201 may, in our view, be read to indicate that the legislature might allow more flexibility in defining the standard of "significant interest" in a sparsely populated district than in a large urban district. In addition, we believe it is evident that section 23.201 was designed, however imperfectly, to permit a school district to contract with, for example, Southwestern Bell, even though one of its trustees is an employee of that company. It is manifest that the *intent* of this legislation was to proscribe self-dealing. In applying section 23.201, one should focus on the extent to which an individual trustee might benefit from a particular contract. Whether a particular set of circumstances are included within the meaning of "significant interest" requires the resolution of factual issues not appropriate to the opinion process.

## S U M M A R Y

Although the legislature, in enacting section 23.201, Education Code, did not specifically define the boundaries of the term "significant interest," it clearly intended thereby to proscribe self-dealing. Whether a particular set of circumstances are included within the meaning of "significant interest" requires the resolution of factual issues not appropriate to the opinion process.

Very truly yours,

DAN MORALES
Attorney General of Texas

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Deputy Attorney General for Litigation

RENEA HICKS
State Solicitor

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by Rick Gilpin
Deputy Chief, Opinion Committee